In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00162-CR


______________________________




LEDARRYL ANDRE MURPH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 34,227-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Ledarryl Andre Murph was convicted by a jury of robbery and was sentenced to seventy-five
years' imprisonment. On appeal, he contends that the conviction should be reversed because the
court erred in denying his motion for an instructed verdict and that the punishment should be
reversed because he did not receive a requested continuance.

 A point of error complaining about a trial court's failure to grant a motion for directed or
instructed verdict is a challenge to the legal sufficiency of the evidence. Williams v. State, 937
S.W.2d 479, 482 (Tex. Crim. App. 1996); Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App.
1993). In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 Robbery exists when a person commits theft, and in the course of so doing, "intentionally,
knowingly, or recklessly causes bodily injury to another; or intentionally or knowingly threatens or
places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02(a), (b)
(Vernon 2003). Murph contends there is no evidence that he had the necessary criminal intent to
commit the crime. 


 The evidence shows that Murph smashed a window on a truck, stole a purse, and then
attempted to escape in a van. A citizen, Rick Rumfield, caught Murph and took him back to the
building, where Rumfield confronted him about the theft. Murph tried to escape from Rumfield, and
in so doing, there is evidence that he struck and pushed Rumfield. Rumfield testified he was
bleeding at the end of the scuffle. 

 "In the course of committing theft" is defined by the Texas Penal Code as conduct that occurs
in an attempt to commit, during the commission, or in immediate flight after the theft. Tex. Penal
Code Ann. § 29.01(1) (Vernon 2003). There is proof of an injury to Rumfield during the course of
Murph's attempt to escape after the theft. That is sufficient to show that the act occurred. 

 Mental states are almost always inferred from acts and words. The mental culpability of a
defendant is of such a nature that it generally must be inferred from the circumstances in which a
prohibited act or omission occurs. A mental state is concealed within the mind of an individual and
can only be determined from his or her words, acts, and conduct. Moore v. State, 969 S.W.2d 4, 10
(Tex. Crim. App. 1998).

 Undoubtedly, Murph's intent was to escape. While attempting to execute his intention, he
caused injury. The statute only requires that, while committing theft, the person intentionally,
knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 29.02(a)(1)
(Vernon 2003). Rumfield testified Murph repeatedly attempted to get away from him and escape
before the police could arrive; Rumfield was injured during one of those failed attempts. Under
these facts and the statute, Murph's argument that his activities occurred after the theft was
completed is unavailing.

 The record contains evidence of actions that reflect the necessary mens rea. Thus, the trial
court did not err by overruling the motion for an instructed verdict. The contention of error is
overruled.

 Murph also contends that the court erred in failing to grant a motion for continuance based
on the notice given concerning the enhancement allegations. Murph argues that, because the State
only gave him notice it intended to use out-of-state convictions as enhancement four days before jury
selection, (1) he did not have constitutionally adequate notice. He contends the State also declined to
actually produce a copy of the paperwork from the State of Minnesota until the punishment phase
of trial was actually beginning. 

 Murph correctly notes he was entitled to notice. (2) However, to preserve a claim that a motion
for continuance was improperly denied, a written motion for continuance must be filed. Here, no
written motion for continuance was ever presented to the trial court. Dewberry holds specifically
that a motion for continuance must be made in writing, and must be sworn; otherwise, any complaint
is forfeited. Dewberry v. State, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). 

 Although there was some discussion about the timeliness of the notice, and a statement by
counsel that he would ask for ten days' notice for an enhancement paragraph, no ruling was made
on the request. Further, Murph never presented the trial court with a written motion for continuance. 
In the absence of such written and sworn motion, no error is preserved. Id. Accordingly, the
contention now raised on appeal was not adequately presented to the trial court for decision and has
not been preserved for our review. See Tex. R. App. P. 33.1.

 We affirm the judgment.


 Jack Carter

 Justice


Date Submitted: April 2, 2007

Date Decided: April 25, 2007


Do Not Publish

1. Murph argues that only one "working day" was available after the notice. 
2. See Brooks v. State, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997); Richardson v. State, 170
S.W.3d 855, 857 (Tex. App.--Texarkana 2005, pet. ref'd).


le="text-align: center">Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            This appeal is taken from a judgment in favor of Ricky Allen Siglar, independent executor
of the estate of Otha Siglar, deceased, in which he was awarded recovery of estate funds from the
executor's sister, Cecillia Hailey, who claimed that their father, the testator, permitted her to transfer
those funds before his guardianship and before his death. The executor initiated probate proceedings
in the county court at law, but brought the action to recover estate funds in the district court. The
sister now appeals the judgment, arguing that the district court did not have jurisdiction to act in the
matter. We agree, vacate the district court's judgment, and dismiss the case.
I.         FACTUAL AND PROCEDURAL HISTORY
            In October 2002, Otha Siglar's daughter, Cecillia, transferred approximately $100,000.00 of
her father's preguardianship and predeath assets from his account to hers. Cecillia maintains
Mr. Siglar authorized the transfer. In November 2002, Mr. Siglar executed a general power of
attorney appointing Cecillia as attorney-in-fact. After Mr. Siglar passed away, his son, Ricky,
opened probate proceedings in August 2003 in County Court at Law No. 2 of Angelina County. 
Ricky was appointed independent executor in those proceedings. 
            On December 2, 2003, Ricky filed a petition in the 217th Judicial District Court of Angelina
County to recover the funds that were transferred from Otha's account to Cecillia's. Cecillia filed
an answer, but did not appear at trial. The trial testimony consisted primarily of Ricky's deposition
testimony regarding the events occurring in the final months of Mr. Siglar's life. On February 14,
2005, the district court signed a judgment in favor of Ricky, ordering that Cecillia pay $96,250.57
to the estate and $1,500.00 in attorney's fees. It is this judgment that is the subject of this appeal.
II.       DISCUSSION
A.        The Amount in Controversy Has No Bearing on the Jurisdiction of a County Court at
Law Sitting in Probate

            We begin by addressing the position taken by Ricky in the trial court that the amount in
controversy here vested jurisdiction in the district court. In response to the trial court's concern
regarding its jurisdiction over this probate-related matter, Ricky's trial counsel explained his position:
THE COURT:Well, somebody explain how it got to district court.
. . . . 
[Counsel for Ricky]:It's a $100,000 is how it got to you.
            Angelina County does not have a statutory probate court. Instead, it has two county courts
at law, which are specifically given probate jurisdiction:
(a) In addition to the jurisdiction provided by Section 25.0003 and other law,
a county court at law in Angelina County has:
 
(1) concurrent with the county court, the probate jurisdiction provided
by general law for county courts; and 
 
(2) concurrent jurisdiction with the district court in:
 
(A) civil cases in which the matter in controversy exceeds
$500 but does not exceed $50,000, excluding interest; and
 
(B) family law cases and proceedings.
Tex. Gov't Code Ann. § 25.0052 (Vernon 2004). So, while it might appear that this case involving
nearly $100,000.00 would fall outside the jurisdictional limits of the county court at law, we rely on
clear authority from the Texas Supreme Court to conclude otherwise: The monetary limitations on
a statutory county court's jurisdiction in civil cases do not limit its probate jurisdiction. See English
v. Cobb, 593 S.W.2d 674, 675 (Tex. 1979). Therefore, the amount in controversy had no bearing
on whether the district court had jurisdiction over this probate-related proceeding. 
B.        The District Court Did Not Have Jurisdiction by Virtue of the Former Section 5(a) of
the Texas Probate Code

            Having determined that the district court did not have jurisdiction as a simple result of the
amount in controversy, we continue by discussing whether the district court otherwise had
jurisdiction over this matter. To do so, we must first lay out the applicable jurisdiction provisions.
            1.         General Rule: Probate Jurisdiction Belongs to the County Courts
            The Texas Constitution provides that the district court shall have "exclusive, appellate, and
original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive,
appellate, or original jurisdiction may be conferred by this Constitution or other law on some other
court, tribunal, or administrative body." Tex. Const. art. V, § 8. The Texas Probate Code
specifically confers general probate jurisdiction on the constitutional county courts:
The county court shall have the general jurisdiction of a probate court. It
shall probate wills, grant letters testamentary and of administration, settle accounts
of personal representatives, and transact all business appertaining to estates subject
to administration, including the settlement, partition, and distribution of such estates.

Tex. Prob. Code Ann. § 4 (Vernon 2003). The Texas Government Code extends probate
jurisdiction to statutory county courts. Tex. Gov't Code Ann. § 25.0003(d) (Vernon Supp. 2005). 
Thus, a statutory county court has concurrent probate jurisdiction with the constitutional county court
unless the county also has a statutory probate court. In the latter situation, only the statutory probate
court exercises probate jurisdiction concurrent with the constitutional county court. See Tex. Gov't
Code Ann. § 25.0003(e), (f) (Vernon Supp. 2005).
            Here, we know from our previous discussion that the County Court at Law No. 2 is vested
with probate jurisdiction. See Tex. Gov't Code Ann. § 25.0052. There is no statutory probate court
in Angelina County. With these two facts in mind, we look to the Texas Probate Code and note that
Section 5(c) is applicable:
            In those counties in which there is no statutory probate court, but in which there is
a county court at law or other statutory court exercising the jurisdiction of a probate
court, all applications, petitions, and motions regarding probate and administrations
shall be filed and heard in those courts and the constitutional county court, . . . 
unless otherwise provided by law. The judge of a county court may hear any of those
matters regarding probate or administrations sitting for the judge of any other county
court. In contested probate matters, the judge of the constitutional county court may
on the judge's own motion, and shall on the motion of a party to the proceeding,
transfer the proceeding to the county court at law or a statutory court exercising the
jurisdiction of a probate court other than a statutory probate court. The court to
which the proceeding is transferred may hear the proceeding as if originally filed in
the court.
Tex. Prob. Code Ann. § 5(c) (Vernon 2003) (emphasis added). Thus, the County Court at Law
No. 2 of Angelina County has original jurisdiction over the administration of Mr. Siglar's estate. 
Any court exercising original probate jurisdiction also has jurisdiction to hear matters incident to the
estate. See Tex. Prob. Code Ann. § 5(e) (Act of May 1, 2001, 77th Leg., R.S., ch. 63, § 1, 2001
Tex. Gen. Laws 104, 105 (current version at Tex. Prob. Code Ann. § 5(f) (Vernon 2003)).
            The effect of all these provisions is that, ordinarily in Angelina County, the county court at
law would have jurisdiction to hear matters "incident to an estate." With regard to proceedings in
statutory county courts, matters "incident to an estate" are defined to include "all claims by or against
an estate" and "all actions for trial of title to land and for the enforcement of liens thereon incident
to an estate." Tex. Prob. Code Ann. § 5A(a) (Vernon Supp. 2005); Bailey v. Cherokee County
Appraisal Dist., 862 S.W.2d 581, 585 (Tex. 1993). Therefore, the County Court at Law No. 2 had
jurisdiction over Ricky's suit.
            The question here, however, is whether, under a now-repealed provision, the district court
gained jurisdiction over this particular matter since it was brought by the independent executor of
an estate even when the administration of that estate was pending in the county court at law.
            2.         Probate Jurisdiction of the District Court
            The Texas Probate Code applicable to these proceedings provides that "[t]he district court
shall have original control and jurisdiction over executors and administrators under such regulations
as may be prescribed by law." Tex. Prob. Code Ann. § 5(a) (Vernon 2003) (Act of May 1, 2001,
77th Leg., R.S., ch. 63, § 1, 2001 Tex. Gen. Laws 104, 104, repealed by Act of May 28, 2003, 78th
Leg., R.S., ch. 1060, § 16, 2003 Tex. Gen. Laws 3052, 3057);


 Palmer v. Coble Wall Trust Co., 851
S.W.2d 178, 181 (Tex. 1992). The precise effect of this now-defunct provision is at the center of this
appeal. We must determine the proper relationship between Section 5(a) and other Texas Probate
Code provisions that grant jurisdiction to the county courts, the most relevant being Section 5(c).
            3.         Interpreting Section 5(a), Section 5(c), and Bailey 
            Again, Section 5(a) provides that "the district court shall have original control and jurisdiction
over executors and administrators . . . as may be prescribed by law." Tex. Prob. Code Ann. § 5(a)
(repealed); Palmer, 851 S.W.2d at 181. And Section 5(c), in pertinent part, provides:
In those counties in which there is no statutory probate court, but in which there is a
county court at law or other statutory court exercising the jurisdiction of a probate
court, all applications, petitions, and motions regarding probate and administrations
shall be filed and heard in those courts and the constitutional county court, unless
otherwise provided by law.
Tex. Prob. Code Ann. § 5(c) (emphasis added).
            Assuming Section 5(a) vests the district court with jurisdiction over suits brought by a
personal representative to recover estate property, Section 5(c) makes it clear Section 5(a) does not
render exclusive the district court's jurisdiction over these matters. Sections 5(e) and 5A(a) clearly
contemplate that a county court at law exercising probate jurisdiction is vested with jurisdiction over
suits involving personal representatives since matters incident to an estate and claims by or against
an estate are, generally, pursued or defended by estate representatives. Since any jurisdiction granted
to the district court by Section 5(a) necessarily brings to issue jurisdiction of the county court at law
exercising jurisdiction over the pending estate, we look to the relationship between Section 5(a) and
other provisions of the Texas Probate Code, most notably Sections 5(c) and 5(e).
            The most relevant case on point is Bailey v. Cherokee County Appraisal District. In Bailey,
probate proceedings were brought in the county court at law of Cherokee County. Bailey, 862 S.W.2d
at 582. After the county court at law commenced its dependent administration, the taxing authorities
brought suit in the district court. Id. at 583. The Baileys filed a plea in abatement and a motion to
dismiss this suit for want of jurisdiction. Id. at 585. The district court entered its final judgment in
favor of the taxing authorities and overruled the Baileys' motion to dismiss. Id. The Texas Supreme
Court reversed the court of appeals' judgment and dismissed the taxing authorities' action. Id. at 586.
            The Texas Supreme Court expressly disagreed with the argument made here that Section 5(a)
vested the district court with jurisdiction over the suit. Id. at 585. However, there is some
disagreement on whether Bailey held that the county court at law in which the estate administration
is pending gains exclusive jurisdiction or merely dominant jurisdiction. While this distinction was
of little impact in Bailey, such a distinction bears significantly on this case since Cecillia never
challenged the district court's jurisdiction.



            Bailey discusses the issue in terms of both exclusive jurisdiction and dominant jurisdiction:
[B]ecause the ongoing administration in the county court at law sitting in probate was
the only probate proceeding pending, that court alone had jurisdiction over matters
incident to the estate. 
 
Furthermore, the court in which suit is first filed acquires dominant jurisdiction to the
exclusion of coordinate courts. Curtis v. Gibbs, 511 S.W.2d 263, 267 (Tex. 1974).
Because the administration was already pending in the county court when this suit was
filed in the district court, the jurisdiction of the county court is dominant.
 
Id. at 585–86. Despite the use of the terms relating to dominant jurisdiction, we think the sounder
reading of Bailey is one that concludes that, on these facts, the county court at law is vested with
exclusive jurisdiction. Such a reading is consistent with the overall treatment of the issue in Bailey
and its conclusion regarding when a court may hear matters incident to an estate: "A court
empowered with probate jurisdiction may only exercise its probate jurisdiction over matters incident
to an estate when a probate proceeding related to such matters is already pending in that court." Id.
at 585. 
            4.         Section 5(c) Confers Exclusive Jurisdiction over this Matter Since the Estate
Administration Was Pending in the County Court at Law
 
            Most courts have applied Bailey in this way, concluding that the county court at law would
have acquired jurisdiction, to the exclusion of district courts, over matters incident to an estate
pending before the county court.


 See Bailey, 862 S.W.2d at 585–86; Miller v. Woods, 872 S.W.2d
343, 345 (Tex. App.—Beaumont 1994, orig. proceeding). For instance, the Dallas court read Bailey
to stand for the proposition that the district court never acquired jurisdiction:
The state constitution authorizes the legislature to diminish or eliminate a district
court's jurisdiction in "probate matters." See Tex. Const. art. V, § 8. Section 5(c) of
the probate code, where applicable, divests the district courts of jurisdiction in all
probate matters. Because this suit is one "appertaining to or incident to an estate," it
is a "probate matter" within the meaning of article V, section 8 of the constitution and
one "regarding probate or administration" under section 5(c) of the probate code. 
Accordingly, the district court properly recognized that it lacked jurisdiction to hear
the case.
 
Howe State Bank v. Crookham, 873 S.W.2d 745, 748 (Tex. App.—Dallas 1994, no pet.) (footnotes
omitted) (emphasis added).
            The Beaumont Court of Appeals, from which this case is transferred, also takes this position. 
In Miller, the judge of the county court at law transferred the case to the 253rd Judicial District Court. 
Miller, 872 S.W.2d at 344. The case proceeded to trial and ended with a judgment denying admission
to probate. Id. No appeal followed, but Miller filed a petition to set aside the judgment for lack of
jurisdiction, and the trial court denied that motion. Id.
            In holding that the district court lacked subject-matter jurisdiction, the Beaumont court read
Bailey as providing for exclusive jurisdiction in the county court at law in which the administration
of the estate was begun:



In counties where there are statutory county courts exercising probate jurisdiction,
such courts share original jurisdiction over probate proceedings with the constitutional
county court, to the exclusion of the district court.
 
See id. at 345. We agree with this application of Bailey and conclude that the County Court at Law
No. 2 of Angelina County had exclusive jurisdiction of Ricky's suit against Cecillia and that the
district court never acquired jurisdiction over the action.
            5.         Applying the Rules of Statutory Construction
            This result is consistent not only with Bailey, but also with rules of statutory construction.



            First, we reiterate that Section 4 of the Texas Probate Code specifically grants general probate
jurisdiction to the constitutional county courts. The Texas Government Code extends that jurisdiction
to the county courts at law. See Tex. Gov't Code Ann. § 25.0003(d); see also English, 593 S.W.2d
at 676 (noting that the Legislature vested statutory county courts exercising original probate
jurisdiction with the power to adjudicate the right to property incident to an estate, and this grant of
jurisdiction empowered the statutory county courts to resolve disputes involving the nature and extent
of third parties' rights in assets that are claimed to belong to an estate under administration). To hold
that Section 5(a) granted the district court concurrent jurisdiction to hear any probate matter is
inconsistent not only with Section 5(a)'s own internal limitation, but also with the entire jurisdictional
rubric of the Texas Probate Code and the Legislature's obvious efforts to direct the large majority of
probate-related matters to the county courts. 
            Second, we evaluate Section 5(a) in light of the district court's jurisdiction to hear certain
matters through transfer from the county court. Again, in counties where there is a statutory court
exercising probate jurisdiction, most probate matters must be filed and heard in the statutory court
or the constitutional county court, rather than the district court, "unless otherwise provided by the
law." See Tex. Prob. Code Ann. § 5(c). The county judge may transfer contested probate matters
to one of the statutory courts, but not to the district court. See Palmer, 851 S.W.2d at 181.
            From this, there appears to be a procedure in effect that reserves estate matters for the county
courts or statutory probate courts. Since the statutory scheme disallows transfer of a contested portion
of an estate matter to a district court in this setting, then it is inconsistent with those provisions if
parties involved in a pending estate administration could use Section 5(a) to present in the district
court the same matter that could not be transferred there.
            Finally, it is important to point out that Section 5(a) expressly limits the breadth of its own
application, stating that it was subject to "such regulations as may be prescribed by law." After
examining the above-referenced provisions, it is reasonable to conclude that Section 5(c) is quite
simply one of the limitations with which Section 5(a) limits itself.
C.        What, Then, Is the Effect of Section 5(a)
 
            In construction of a statute, we are not to render a provision without effect. With that in mind,
we point out that Section 5(c), which grants jurisdiction to the county courts over matters incident to
the estate, applies in a specific setting. That is, Section 5(c) limits its application to counties in which
there is no statutory probate court, but in which there is a county court at law with probate
jurisdiction. This setting describes Angelina County.
            However, there are counties in which there are no county courts at law and no statutory
probate courts. See Weldon v. Hill, 678 S.W.2d 268, 275 (Tex. App.—Fort Worth 1984, writ ref'd
n.r.e.). It is reasonable to interpret Section 5(a) as a default provision. That is, Section 5(a) would
apply when none of the other, more specific provisions apply. This application is also consistent with
the rules of statutory construction that a specific provision governs when it seems to be in conflict
with another, more general, provision. Under this construction, Section 5(a) was inapplicable to
Ricky's suit since Angelina County had a county court at law vested with probate jurisdiction. 
III.      PLEA FOR REFORM
            This case illustrates the need for uniform jurisdictional requirements for the various courts in
the State of Texas. Only after an inordinate effort could a determination be made concerning the
proper forum for filing a relatively simple lawsuit. Parties should be able to know where to file a
lawsuit without resorting to a trial and a lengthy appellate court opinion. We suggest that the
Legislature look seriously at the complicated and overlapping trial court jurisdictional requirements
in this state and enact reforms to make jurisdictional requirements uniform and understandable.
IV.      CONCLUSION
            The 217th Judicial District Court never acquired subject-matter jurisdiction over this matter. 
Therefore, its judgment is void. See Reiss v. Reiss, 118 S.W.3d 439, 443 (Tex. 2003); Shell Cortez
Pipeline Co. v. Shores, 127 S.W.3d 286, 295 (Tex. App.—Fort Worth 2004, no pet.). We sustain
Cecillia's first point of error, vacate the district court's void judgment, and dismiss Ricky's claims.


 
See Tex. R. App. P. 43.2(e).
 
 
                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          April 21, 2006
Date Decided:             May 17, 2006