

# NUMBERS 13-19-00592-CV, 13-20-00016-CV & 13-20-00106-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## GUARDIANSHIP OF LEON R. BERNSEN SR., AN INCAPACITATED PERSON

### On appeal from the County Court at Law No. 5 of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Tijerina

In appellate cause numbers 13-19-00592-CV, 13-20-00016-CV, and 13-20-00106-CV, appellant Stephen Livingston appeals three trial court orders: two orders appointing Clay Hoblit as temporary guardian of the ward Leon Bernsen Sr. and one order voiding a previous Harris County trial court order, which had appointed Livingston as Bernsen's guardian with limited authority. By five issues, Livingston asserts: (1) the trial court's order appointing Hoblit as temporary guardian is void because (a) the trial court's jurisdiction

expired, and (b) Bernsen was not personally served; (2) the trial court could not appoint Hoblit as temporary guardian because Livingston was already Bernsen's guardian pursuant to the Harris County trial court order; (3) the trial court "could not simply void the Harris County Court's order appointing" Livingston as guardian; (4) the trial court could not reappoint Hoblit after his term expired because a motion to disqualify and recuse the trial court judge was filed; and (5) all orders entered on motions and requests made by Hoblit, the improperly-appointed guardian, should be set aside and vacated. We affirm in all cause numbers.

## I.     PROCEDURAL HISTORY

### A.     The Original Guardianship in Nueces County

On November 25, 2015, Dianna Bernsen initiated a guardianship proceeding in Nueces County and sought to become Bernsen's guardian. Dianna is Bernsen's daughter. Several competing applications for guardianship and motions in limine contesting the guardianship were filed by different parties, including an application by Bernsen's son Leon Bernsen Jr. and Bernsen's sister Virginia Means.

On May 13, 2016, the trial court appointed Timothy Japhet as Bernsen's temporary guardian. The temporary guardianship was set to expire on August 18, 2016. The trial court also appointed Arnold Gonzales as Bernsen's guardian ad litem on June 21, 2016.

On February 3, 2017, Lynn Allison, Bernsen's granddaughter,[1] filed a competing application for guardianship. Lynn and Dianna filed competing motions in limine

---

[1] Lynn is Leon's Bernsen Jr.'s daughter. Leon died in February 2017. Thereafter, Lynn took over Leon's legal proceedings, including participating in a separate lawsuit in the trial court against Bernsen.

challenging each other's standing to participate in Bernsen's guardianship proceeding, each asserting the other held adverse interests to Bernsen. Virginia voluntarily withdrew her application for guardianship shortly thereafter. On September 20, 2017, following an evidentiary hearing, the trial court held that Dianna and Lynn both held interests adverse to Bernsen and lacked standing to create or contest Bernsen's guardianship proceeding (2017 limine order). The parties appealed both rulings to our Court. *See In the Guardianship of Leon R. Bernsen Sr., an Alleged Incapacitated Person*, Nos. 13-17-00591-CV, 13-17-00593-CV, 2019 WL 3721339, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 8, 2019, pet. denied) (mem. op.).

## B.  Subsequent Guardianship in Harris County

On September 20, 2017, the same day the Nueces County ruled against Dianna and Lynn, Livingston—Dianna's husband—initiated a new guardianship proceeding in Harris County seeking the appointment of two people to serve as guardian of Bernsen's person and estate.[2] In his application, Livingston did not disclose any of the prior proceedings in Nueces County, the 2017 limine order, nor Dianna or Lynn's pending appeals, stating instead that Dianna was "unable to serve." All of Bernsen's siblings were listed on the application, and none were listed as deceased. Bernsen was served with citation for the new guardianship on September 22, 2017. The Harris County trial court appointed an attorney ad litem and an investigator.

## C.  Concurrent Proceedings

Meanwhile, in the original guardianship proceeding in Nueces County, Gonzales

---

[2] Both persons Livingston sought to be Bernsen's guardians filed waivers relinquishing their rights to serve as guardians.

3

filed an application for guardianship on September 22, 2017. On May 11, 2018, the Nueces County trial court ordered Japhet's duties discharged and closed the temporary guardianship. The Nueces County trial court also denied Gonzales's application for permanent guardianship without prejudice.

On December 11, 2018, the Harris County trial court reissued its order appointing the attorney ad litem and the investigator. Two days later, Livingston amended his application in Harris County and disclosed pending litigation in the trial court to which Bernsen was a party. He sought to become Bernsen's limited guardian of the estate to handle the litigation matters on Bernsen's behalf. According to Livingston's brief on appeal, his amended "application listed [Bernsen's] children and siblings but mistakenly listed Virginia Means as deceased" although he did not make this mistake on the initial application. *See* TEX. EST. CODE ANN. § 1051.104 (requiring an application for guardianship to be sent to each adult sibling of the proposed ward). The attorney ad litem denied the allegations in Livingston's application and prayed for Livingston to take nothing.

Livingston again amended his application on January 14, 2019. In his appellate brief, Livingston maintains that the "amendment carried forward the original mistaken list of siblings." In this amended application, Livingston claims he "expanded on [Bernsen's] interests in the various litigation and attached Dianna's powers of attorney."

On January 30, 2019, the Harris County trial court held a hearing on Livingston's amended application in the new guardianship. When asked why Dianna was unable to serve as guardian, Dianna responded: "Well, I have kind of got my plate full with business

4

and [Livingston] and my dad are very close . . . . They have a good interaction and they are just very close and I think my dad admires him and I know [Livingston] admires my dad." The Harris County trial court appointed Livingston as Bernsen's limited permanent guardian of the estate as requested.

**D.       Harris County transfer to Nueces County**

On July 11, 2019, in Harris County, Lynn filed a motion to dismiss the Harris County guardianship proceedings for want of jurisdiction. She asserted she was unaware of these concurrent proceedings; the Nueces County trial court had continuing jurisdiction of the guardianship; Dianna lacked standing and could not participate (vicariously through Livingston) in the guardianship proceeding per 2017 limine order; Livingston's application falsely stated Virginia was deceased (even though she participated in the Nueces County guardianship proceedings); Livingston made false representations in his application; and two appeals of the 2017 limine orders were pending.[3] Livingston responded that Lynn lacked standing to participate in this proceeding as per the Nueces County motion in limine order and that the guardianship in Nueces County was closed. Following a hearing on September 5, 2019, the Harris County trial court abated the case awaiting confirmation from the Nueces County trial court on the court retained jurisdiction.

On September 6, 2019, Livingston filed a motion to clarify status proceeding in

---

[3] On August 8, 2019, this Court upheld the trial court's ruling that Dianna and Lynn both held interests adverse to Bernsen and were prohibited from instituting guardianship proceedings. *In the Guardianship of Leon R. Bernsen, Sr., an Alleged Incapacitated Person*, Nos. 13-17-00591-CV, 13-17-00593-CV, 2019 WL 3721339, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 8, 2019, pet. denied) (mem. op.); *see* TEX. EST. CODE ANN. § 1055.001(b) (providing that a person who has an interest adverse to the ward is not entitled to file an application to create a guardianship, contest the creation of a guardianship, contest the appointment of a person as guardian, or contest an application for complete restoration or modification of the ward's guardianship).

5

Nueces County pursuant to the Harris County trial court's request. On October 1, 2019, the Nueces County trial court determined it retained exclusive jurisdiction, and the Harris County trial court transferred the proceeding to Nueces County. The Harris County court's transfer order stated: "as the proceeding in Nueces County Court at Law 5 was first commenced, that court has and retains jurisdiction of the proceeding to the exclusion of any other court in which a proceeding involving the same estate was commenced."

## E.     Hoblit's Appointment

The next day, Bradley Pickens filed an application for appointment of a temporary and permanent guardian of Bernsen in Nueces County.[4] Livingston filed a motion to transfer the guardianship back to Harris County, which the Nueces County trial court denied. Following a hearing, the trial court appointed Hoblit as Bernsen's temporary guardian on November 7, 2019. Hoblit requested that the Nueces County trial court void the Harris County orders. On January 10, 2020, the Nueces County court voided "ab initio" all Harris County guardianship orders. On January 13, 2020, the trial court entered an order similar to its November 7, 2019 order appointing Hoblit Bernsen's temporary guardian.

## F.     Subsequent Motions

That same day, Fernando Caballero,[5] filed a motion to recuse the trial judge, which was dismissed. Livingston also filed a motion to disqualify the trial judge, which was denied. Thereafter, Dianna and Livingston filed motions in Harris County seeking

---

[4] Appellees refer to Bradley Pickens as a "family friend." Appellant claims that Bradley Pickens is Lea Bernsen's friend. Lea Bernsen is Bernsen's granddaughter.

[5] According to Lynn and Hoblit, Caballero is employed by Dianna and Livingston.

6

injunctive relief against Hoblit and the Nueces County trial judge, which were denied. These appeals followed.

## II. STANDARD OF REVIEW

We review a guardianship determination under an abuse-of-discretion standard. *In re Guardianship of Finley*, 220 S.W.3d 608, 612 (Tex. App.—Texarkana 2007, no pet.); *Thedford v. White*, 37 S.W.3d 494, 496 (Tex. App.—Tyler 2000, no pet.). The trial court has broad discretion in the appointment of a guardian. *Thedford*, 37 S.W.3d at 496. A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A trial court also abuses its discretion by ruling without supporting evidence or by misapplying the law to undisputed facts. *See Fuller v. State Farm Cnty. Mut. Ins. Co.*, 156 S.W.3d 658, 660 (Tex. App.—Fort Worth 2005, no pet.). But a trial court does not abuse its discretion when it bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

## III. JURISDICTION

By his first issue, Livingston argues the trial court's order appointing Hoblit as temporary guardian was void because the trial court's plenary power expired and Bernsen was not personally served. Hoblit asserts that Nueces County acquired jurisdiction in 2015 and thereafter retained jurisdiction.

7

**A. Applicable Law**

Pursuant to the Texas Estates Code:

> [f]rom the filing of the application for the appointment of a guardian of the estate or person, or both, until the guardianship is settled and closed under this chapter, the administration of the estate of a minor or other incapacitated person is one proceeding for purposes of *jurisdiction* and is a proceeding in rem.

TEX. EST. CODE ANN. § 1022.002(d) (emphasis added). "It is difficult to read this statute as suggesting something other than that the court in which the guardianship is initiated acquires exclusive jurisdiction over the estate and issues relating to its administration." *Wood v. Dalhart R&R*, 259 S.W.3d 229, 232 (Tex. App.—Amarillo 2008, no pet.). "If it appears to the court at any time before the guardianship is closed that the proceeding was commenced in a court that did not have venue over the proceeding, the court shall . . . transfer the proceeding to the proper county." TEX. EST. CODE ANN. § 1023.002(c). "If a guardianship proceeding is commenced in more than one county, it shall be stayed except in the county in which it was initially commenced until final determination of proper venue is made by the court in the county in which it was initially commenced." *Id.* § 1023.002(b).

**B. Discussion**

**1. Plenary Power**

Livingston asserts: "[Nueces County] lost power 30 days after the September 20 limine orders. No party filed a motion extending the Court's power." We reject this contention.[6] On September 20, 2017, the Nueces County trial court determined that

---

[6] Livingston cites to *City of McAllen v. Ramirez*, 875 S.W.2d 702, 704 (Tex. App.—Corpus Christi–

Dianna held interests adverse to Bernsen, and it ruled that Dianna lacked standing to participate in the guardianship proceeding. However, this ruling did not close the guardianship proceeding as Livingston suggests. *See id.* § 1022.002(d); *Wood*, 259 S.W.3d at 232. The 2017 limine order merely disposed of a discrete issue in a particular phase of the proceeding—whether Dianna had an adverse interest to Bernsen for purposes of her becoming Bernsen's guardian. *See De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006); *see also Matter of Benavides*, No. 04-19-00801-CV, 2020 WL 7365451, at *4 (Tex. App.—San Antonio Dec. 16, 2020, no pet.) (mem. op.). In this regard, there were numerous filings, motions, applications, and proposed orders filed after September 20, 2017, including Gonzales's application for guardianship, which created a new phase of the guardianship proceeding. *See De Ayala*, 193 S.W.3d at 578. Thus, the Nueces County trial court was required to rule on new phases in the guardianship proceeding, independent of the 2017 limine order, and we decline to find the 2017 limine order was a final judgment divesting the Nueces County trial court of jurisdiction.

Second, Livingston initiated a new guardianship proceeding in Harris County on September 20, 2017—the same day as the 2017 limine order. If that Nueces County's plenary power expired on October 20, 2017, then Livingston prematurely initiated a new guardianship proceeding in Harris County while Nueces County retained exclusive jurisdiction of the guardianship. *See id.* § 1022.002(d). Thus, it is inconsistent for Livingston to argue that Nueces County retained jurisdiction on September 20, 2017, yet

---

Edinburg 1994, orig. proceeding) and *In re Bokeloh*, 21 S.W.3d 784, 793 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) to support this contention, but these cases do not address the estates code and are therefore inapplicable.

9

he initiated a new guardianship proceeding in Harris County on that very day.

Alternatively, Livingston asserts that the Nueces County May 11, 2018 order is a final order, and the trial court's jurisdiction expired in June 2018.[7] Livingston uses *In re Guardianship of Miller*, for the proposition that "an order dismissing an application for the appointment of a guardian on its merits is a final order." 299 S.W.3d 179, 184 (Tex. App.—Dallas 2019, no pet.) (mem. op.). However, in *Miller*, the trial court found the ward to have "sufficient mental capacity" to make his own decisions and that it was "neither necessary nor appropriate to appoint a guardian" in that cause; therefore, the court "reassigned" the cause "to the inactive docket of the court." *Id.* at 183.

In this case, the language in the May 11, 2018 order did not settle, close, or otherwise dismiss the entire guardianship proceeding or find Bernsen to be competent: "no permanent guardian for the Ward has been appointed by the Court."[8] *See* Tex. Est. Code Ann. § 1022.002(d) (providing that the administration of the estate of an incapacitated person is one proceeding for purposes of jurisdiction "until the guardianship is settled and closed under this chapter"). The order further dismissed Gonzales's request for permanent guardianship without prejudice, thereby reserving Gonzales the opportunity to file another application in Nueces County.

Moreover, Dianna appealed the 2017 limine order and prayed for this Court to remand the guardianship to Nueces County—not Harris County—so that she may further her quest to become Bernsen's guardian in Nueces County. If our Court had reversed the

---

[7] We note that Livingston also takes the position that "plenary power is extended no more than 105 days from date of judgment."

[8] Conversely, in previous proceedings, the Nueces County trial court found Bernsen to be incapacitated.

10

2017 limine order pursuant to Dianna's request, then Dianna's 2015 application for guardianship would have proceeded in Nueces County with "a single issue to be determined: whether a guardianship should be instituted, and if so, who should be appointed as guardian." *Miller*, 299 S.W.3d at 184; *see also In re Guardianship of Peterson*, Nos. 01-15-00567-CV, 01-15-00586-CV, 2016 WL 4487511, at *5 (Tex. App.— Houston [1st Dist.] Aug. 25, 2016, no pet.) (mem. op.). ("[A] probate court retains jurisdiction to settle an estate so long as a justiciable controversy remains."). Because justiciable issues remained after the trial court closed the temporary guardianship, we reject Livingston's argument that the trial court lacked plenary power to issue its order appointing Hoblit as temporary guardian.

### 2. Personal Service

Next, Livingston asserts that the Nueces County trial court "lost jurisdiction long ago," and "it did not re-acquire jurisdiction" because Pickens's application, which Bernsen was served with, "included only a generalized request that the trial court appoint a temporary guardian without explaining why" and therefore does not meet the requirements of § 1251.003(b). *See* TEX. EST. CODE ANN. § 1251.003(b) (providing that an application for guardianship must state "the facts and reasons supporting the allegations and requests"). First, as we already established, the Nueces County trial court retained exclusive jurisdiction of this guardianship proceeding and therefore did not need to "reacquire" jurisdiction as Livingston contends.

An application for guardianship must state "the facts and reasons supporting the allegations and requests." *Id.* § 1251.003(b). Pickens's application, which Bernsen was

11

served with, stated:

> [Bernsen] is in continued need of medical assistance and supervision due to health issues and his advanced age . . . [Bernsen] has limited ambulatory ability, continues to have some difficulty hearing, and suffers memory loss and confusion . . . [Dianna and Lynn] have been found by this Court to lack standing because of interests adverse to [Bernsen] (appeals pending) . . . the physical, mental, and emotional well-being of [Bernsen] requires the appointment of a temporary and/or permanent guardian, particularly in light of the inability of [Bernsen's] family to get along when visiting [Bernsen] . . . the appointment of a temporary guardian . . . is necessary to promote and protect [Bernsen's] estate and person.

Thus, we conclude that these pleadings explain why a guardian was necessary and is not merely a generalized request. *See id.*

Additionally, Livingston further argues that Bernsen "was not personally served with a copy of the supplemental application for such appointment" and that the failure to personally serve an amended or supplemental application renders any subsequent orders void. Livingston relies on *In re Guardianship of Phillips*, No. 01-14-01004-CV, 2016 WL 3391249, at *7 (Tex. App.—Houston [1st Dist.] June 26, 2016, no pet.) (mem. op.) and *In re Guardianship of Gafford*, No. 01-17-00634-CV, 2019 WL 2127597, at *3 (Tex. App.—Houston [1st Dist.] May 16, 2019, no pet.) (mem. op.), to support his position. However, we find no authority which mandates that a ward must be served with an amended application for guardianship for the trial court to retain jurisdiction.

In *Phillips*, the applicant requesting a guardianship withdrew his application for guardianship and requested that the trial court close the estate. 2016 WL 3391249, at *7. Subsequently, the applicant filed a supplement to his withdrawn application for guardianship. *Id.* The trial court considered whether the applicant "had a live pleading entitling him to seek appointment as guardian of the ward and his estate." *Id.* The trial

12

court scrutinized the language used in the application to withdraw and also noted that the "supplement to [the applicant's] withdrawn application for guardianship was never served on the ward" and only served on the attorneys in the case. *Id.* The trial court concluded that the applicant withdrew his application, and he had no live pleading on file. *Id.* The appellate court agreed. *Id.* This case is distinguishable because it does not involve a withdrawn application and a consideration of whether Pickens "had a live pleading entitling him to seek appointment as guardian of the ward and his estate." *Id.*

Similarly, in *Gafford,* Emily filed an application to be named permanent guardian, but thereafter filed a second application seeking the appointment of Debbie as permanent guardian. 2019 WL 2127597, at *3. The trial court appointed Debbie, and the appellate court vacated the order because there was nothing in the record indicating that the ward or Debbie were served in accordance with § 1051.103. *Id.* However, this case does not involve the failure to serve Bernsen with a new application for guardianship or the appointment of a different guardian. Therefore, we find *Gafford* distinguishable and Livingston's contentions unavailing.[9]

Based on the foregoing, we find that the trial court did not abuse its discretion in appointing Hoblit as temporary guardian. *See In re Guardianship of Finley*, 220 S.W.3d at 612. We overrule Livingston's first issue.

## IV. HARRIS COUNTY ORDER

By his second issue, Livingston asserts that Hoblit could not be appointed temporary guardian because Livingston was already Bernsen's guardian pursuant to the

---

[9] Further undermining Livingston's argument is his own failure to serve Bernsen with his amended applications for guardianship in Harris County, which he argues render Hoblit's appointment void.

Harris County trial court order. By his third issue, Livingston argues the trial court could not void the Harris County trial court's orders because they were binding on Nueces County.

### 1. Hoblit's Appointment

The Harris County trial court appointed Livingston guardian of Bernsen's estate with limited authority to represent Bernsen in pending litigation in Nueces and Harris County. After the Harris County trial court transferred the guardianship proceeding to Nueces County, the Nueces County trial court appointed Hoblit as Bernsen's guardian of person and estate. Shortly thereafter, the Nueces County trial court "ORDERED, ADJUDGED, and DECREED that all court orders entered in the Harris County Guardianship Matter . . . are **void ab initio**." (Emphasis in original.).

"If a document is void or void ab initio, it is as if the document did not exist because it was ineffective from the beginning." *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Black's Law Dictionary defines void as "[o]f no legal effect; to null" and void ab initio as "null from the beginning, as from the first moment when a contract is entered into." *Void*, BLACK'S LAW DICTIONARY (11th ed. 2019). Therefore, the Harris County order appointing Livingston as Bernsen's guardian with limited authority has no legal effect and is considered null from the beginning. Because the voided order is null from the beginning, we reject Livingston's argument that the Nueces County trial court had no authority to appoint a guardian of the estate. We overrule Livingston's second issue.

### 2. Non-binding Order

Livingston argues that "[w]hen the Harris County Court transferred its file to [the Nueces County trial court] in December 2019, the Livingston appointment order was valid and binding on [Nueces County]." He emphasizes the following pertinent language from the estates code: "When a proceeding is transferred to another county under a provision of this chapter, *all orders entered in connection with the proceeding shall be valid and shall be recognized in the court to which the guardianship was ordered transferred*"; however, that language is modified by the following: "if the orders were made and entered in conformance with the procedures prescribed by this code." TEX. EST. CODE ANN. § 1023.002. Therefore, based on the express language of the statute, the orders from a transferring court are only valid and shall be recognized if they were made and entered in conformance with the estates code. *See id.*

Here, the Nueces County trial court expressly stated that it determined the Harris County trial court orders were not made in conformance with the estate code for several reasons. For example, the trial court noted that in Harris County, Livingston did not disclose the Nueces County proceedings or the 2017 limine order. *See id.* § 1023.002(a) (describing continuing exclusive jurisdiction over a guardianship). Hoblit and Lynn argued that the Harris County trial court orders were not made in conformance with the estates code because Livingston frauded the Harris County court. At the hearing, Lynn stated:

> [Dianna and Livingston] also made up a story about why it was that—oh, that Dianna was too busy. They talked about every reason under the sun except for the real reason, which is that Dianna couldn't do it [because she held interests adverse to Bernsen] . . . they represented twice to the [Harris County trial court] in Steve Livingston's application . . . that Virginia Means was dead . . . So, they did not perfect service on her, which they're required

15

to do. They didn't do any of the things required under the Code . . . by [the statute's] expressed language, their failure to comply with the Code means that when the orders are transferred down here, they are not valid.

*See id.* §§ 1051.104(a)(2) (requiring the person filing an application for guardianship to mail a copy of the application and a notice containing the information required in the citation to each adult sibling of the ward); 1051.104(b)(1) (requiring the applicant to file with the court a copy of any notice required by Subsection (a) and proof of delivery of the notice).

Following the hearing, the trial court stated that it determined the Harris County orders were void "for a number of different reasons . . . including that there [were] misrepresentations made to the Houston court." Based on the foregoing, we agree that the evidence supports the trial court's position that the Harris County orders were not made in conformance with the procedures provided for in the estates code. *See* TEX. EST. CODE ANN. §§ 1023.002(a), 1051.104. Therefore, the Harris County orders were not valid and binding on Nueces County upon the transfer of the proceedings.

### 3. No Removal

Livingston further argues that his appointment could not be voided with a "motion to clarify" because "[e]xplicit procedures exist in the Estates Code for removal of a guardian." However, the trial court did not "remove" Livingston as guardian, thereby initiating the removal process. *See id.* § 1203.051–.053. Instead, the trial court voided the order appointing Livingston from its inception—the effect of which eradicated the existence of the Harris County trial court order. In other words, the issue was not whether Livingston should be "removed" after a valid appointment and whether the court should

16

engage in the removal process. *See id.* Rather, the trial court deemed Livingston's appointment "null from the beginning." *Void*, BLACK'S LAW DICTIONARY (11th ed. 2019). Therefore, the trial court did not abuse its discretion in voiding the Harris County trial court order. *See In re Guardianship of Finley*, 220 S.W.3d at 612. We overrule Livingston's third issue.

## V. MOTION TO DISQUALIFY

By his fourth issue, Livingston argues that "Hoblit's 60-day appointment expired," and the trial court could not reappoint him for the duration of the case because a motion to disqualify and recuse the trial court judge was pending.

First, Livingston mistakenly states that "Hoblit's 60-day appointment" "expired January 13, 2020." The trial court's November 7 order appointing Hoblit stated: "This temporary guardianship shall expire on the date a permanent guardian for [Bernsen] is appointed by this court and qualifies to serve, unless otherwise by law." Although the typical term for a routine temporary guardianship is sixty days, *see* TEX. EST. CODE ANN. § 1251.151, for a contested guardianship, the term expires at the conclusion of the challenged hearing, when a permanent guardian is appointed, or at a nine-month anniversary unless extended by court order. *Id.* § 1251.152(b). Pursuant to the trial court's order, Hoblit's appointment lasted until a permanent guardian was appointed and did not expire in sixty days as Livingston contends. Therefore, Livingston's assertion that Hoblit's sixty-day appointment expired is incorrect.

Although Hoblit's temporary guardianship did not expire on January 13, 2020, in an abundance of caution, the trial court stated that it would enter a similar order

17

maintaining Hoblit's guardianship merely "to maintain the status quo while the disqualification motion was dealt with." *See* TEX. R. CIV. P. 18a(f)(2)(a) (providing that when a motion to recuse or disqualify has been filed, "the respondent judge must take no further action . . . except for good cause stated in writing or on the record."). That is, the trial court did not enter any additional orders or take further action—Hoblit was, and continued to be, Bernsen's temporary guardian. We reject Livingston's argument that Hoblit's guardianship expired after sixty days and therefore the trial court could not reappoint him. We overrule his fourth issue. Accordingly, this order was not an abuse of discretion.[10] *See In re Guardianship of Finley*, 220 S.W.3d at 612.

## VI. CONCLUSION

We affirm the trial court's judgments in all cause numbers.

JAIME TIJERINA
Justice

Delivered and filed on the
30th day of September, 2021.

---

[10] By his fifth issue, Livingston argues that "[a]ll orders entered on motions and requests made by the improperly-appointed guardian should be set aside and vacated." Because we determined that Hoblit was not improperly appointed, we overrule Livingston's fifth issue.